James H. Boomeb, J.
By order dated March 23, 1969, the Supreme Court, Steuben County, held the apportionment of the Common Council of the City of Hornell to be unconstitutional and directed the Common Council, on or before February 15, 1971, to submit to the court for approval a local law providing for a permanent plan of apportionment meeting constitutional requirements.
Prior to February 15, 1971, the Common Council moved to extend the time for the submission of the plan of apportionment upon a showing that it was unable to obtain from the United States Department of Commerce, Bureau of Census, the 1970 Census block data for the City of Hornell. The motion to extend the time was adjourned to the June Term of the Supreme Court to be held in Steuben County and on the adjourned date of the motion the Common Council was directed to submit its plan of apportionment to this court on May 24, 1971.
At a hearing held before this court on May 24, 1971, the Common Council presented proof that the 1970 Census block data for the City of Hornell was not yet available; that it had prepared a plan of apportionment using the only 1970 Census figures available; and had adopted a local law embodying that plan. The chairman of the Reapportionment Committee of the Common Council testified concerning the method employed in the preparation of the plan and the plan was submitted to this court for approval.
The court must determine' whether the plan, as adopted by the Council, meets the constitutional standards of the one man-one vote principle (Reynolds v. Sims, 377 U. S. 533 ; Avery v. Midland County, 390 U. S. 474 ; Abate v. Mundt, 25 N Y 2d 309). “ The Equal Protection Clause requires that * * * [the Common Council] make * * * a good faith effort to construct districts * * * as nearly of equal population as is practicable.” (Reynolds v. Sims, 377 U. S., at p. 557 ; Abate v. Mundt, 25 N Y 2d, at p. 314).
The chairman of the Reapportionment Committee testified that the plan divides the City of Hornell into 10 wards of almost *574 equal population ranging from a low of 1,202 persons in the 9th Ward to a high of 1,232 persons in the 8th Ward. The court finds that this division is as nearly equal as the . circumstances will permit.
Since, however, block data was not available for the 1970 Census, the Common Council was not able to derive the population figures for each proposed new ward directly from the 1970 Census data, but had to estimate the population figures of each ward from the only data available to it. The 1970 Census divides the city into 13 Enumeration Districts and gives the population as well as the number of housing units in each Enumeration District. The Common Council, in its plan, constructed each ward by using the whole and a portion of an Enumeration District or Districts. As an example, the First Ward consists of the entire 37th Enumeration District and a portion of the 36th Enumeration District. The 37th Enumeration District has a population, certified by the 1970 Census, of 861. The portion of the 36th Enumeration District situate in the First Ward, has, by actual count made by the chairman of the Reapportionment Committee, 142 housing units. Since the 1970 Census data shows there are 396 housing units and a population of 999 persons in the 36th Enumeration District, there is an average of 2.522 persons in each housing unit in this Enumeration District. The Council deduced, therefore, that there were 358 persons in the 142 housing units in that portion of the 36th Election District in the First Ward. These 358 persons in this portion of the 36th Enumeration District, together with the total population of the 37th Enumeration District, make a total population for the First Ward of 1,219. The estimated population of the other nine wards was computed in the same manner.
While the method used by the Common Council in determining the population of each new ward cannot be as accurate as the direct count of population which will be provided by the block data when it becomes available, I find that, under the circumstances, this method is satisfactory. The Common Council of the City of Hornell has made 11 a good faith effort to construct districts * * # as nearly of equal population as is practicable.” The plan submitted is approved.
The local law embodying the plan of apportionment was enacted under clause (13) of subparagraph a of paragraph (ii) of subdivision 1 of section 10 of the Municipal Home Rule Law and is subject to a permissive referendum (Municipal Home Rule Law, § 10, subd. 1, par. [ii], subpar. a, cl. [13], subcl. [e].) Accordingly, the local law provides that it ‘ ‘ shall take effect *575 forty-five (45) days after its enactment unless a referendum is required by petition.” The local law was enacted on May 22, 1971 and will not become effective until July 6 at the earliest, and if a referendum is required by petition it will not become effective until after it is approved by the voters at a general or special election. So that the local election to be held in November, 1971 may proceed under the new plan of apportionment, this court imposes that plan as a temporary measure. Should the local law embodying the plan become effective, such plan shall become permanent. Should the local law not become effective, the plan embodied in that local law shall remain in effect as a temporary plan and shall govern the local election to be in the City of Hornell in November, 1971.